[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 25, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14816
Non-Argument Calendar

_____

D. C. Docket No. 04-00015-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER BASS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 25, 2005)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Christopher Bass appeals his life sentence imposed after he pled guilty to

conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(A)(ii) & (iii); and 846.  On appeal, Bass argues that in light of United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), the district court violated his Sixth Amendment rights by enhancing his sentence for being a manager or supervisor in the charged criminal conduct, pursuant to U.S.S.G. § 3B1.1(b).  After review, we affirm.

## I. BACKGROUND

### A.    Plea Colloquy

Bass was indicted for conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than fifty grams of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(A)(ii) & (iii); and 846.  Following his indictment, the government filed an information giving notice under 21 U.S.C. § 851 of intent to seek an enhanced statutory penalty of life imprisonment because Bass had been convicted of three prior drug-related offenses, namely (1) a conviction for the sale or purchase of cocaine in July 1989; (2) a conviction for possession of cocaine in January 1990; and (3) a conviction for the sale and possession of cocaine in January 1994.  See 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and (iii) (providing that, in the case of a violation of § 841(a)(1) involving 5 kilograms or more of cocaine or 50 grams or more of

2

cocaine base, where a person has two or more prior convictions for a felony drug offense, "such person shall be sentenced to a mandatory term of life imprisonment without release . . .").

Bass pled guilty to the drug charges listed in his indictment. Prior to accepting his plea, the district court informed Bass that the government had filed a notice stating that he had three prior drug felony convictions in state court, and the district court repeated to Bass the list of convictions contained in the information. The district court asked Bass if he actually had the three stated prior drug convictions, to which Bass answered in the affirmative. The district court then asked Bass if he understood that, because of his prior drug convictions, he was subject to a mandatory minimum sentence in the instant case of life imprisonment.[1]

Bass informed the district court that he understood the applicability of this mandatory minimum to his sentence. The court then explained to Bass that the statutory minimum took priority over the Guidelines, stating "the sentence I'm going to impose is life, and it doesn't matter what the guidelines say." Bass told the district court that he understood this fact.

Also during the plea colloquy, the defendant admitted to the following facts.

---

[1]The district court also informed Bass that the court could impose a sentence of less than life imprisonment if the government filed a substantial assistance motion pursuant to U.S.S.G. § 5K1.1. The government ultimately did not file such a motion.

Bass was a friend of a woman named Angela Goodman. Bass provided money to Goodman, who then used that money to acquire cocaine. Goodman then distributed the cocaine, received the proceeds, and repaid Bass with his initial investment plus his share of the profits. Bass was fully aware that Goodman was using his money to distribute both powder cocaine and crack. Further, Bass admitted that under their arrangement, Goodman sold 50 grams or more of crack.

## B. PSI and Sentencing

According to the Presentence Investigation Report ("PSI"), Bass, working with his brother and others, distributed 1.5 kilograms or more of crack in Florida in the late 1990s. The participants rented cars to deliver cocaine and crack in Florida.

Because Bass distributed more than 1.5 kilograms of crack, the PSI calculated his offense level at 38, pursuant to U.S.S.G. § 2D1.1(a)(3) & (c)(1). Because Bass distributed the crack with his brother as part of a "large drug distribution operation," the PSI recommended a four-level enhancement under U.S.S.G. § 3B1.1(a) for acting as an organizer, leader, manager or supervisor in the charged criminal activity. The PSI also recommended a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) & (b). With a total offense level of 39 and a criminal history category of VI, Bass's Guidelines range was 360 months' to life imprisonment.

4

At his sentencing hearing, which took place in September 2004, Bass objected to the four-level enhancement for his role as an organizer or leader. In making this objection, Bass asserted that the district court's findings of fact to support this enhancement violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000); Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004); or the decision pending at the time of Bass's sentencing hearing, which later was decided by the Supreme Court in United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). Bass also objected on the ground that he was in fact not an organizer or a leader.

At sentencing, the district court found that Bass did not act as an organizer or leader, pursuant to U.S.S.G. § 3B1.1(a), and thus, the district court did not enhance Bass's offense level by four levels. However, after hearing testimony from Angela Goodman and from Bass's brother regarding the drug enterprise, the district court did find that Bass acted as a manager or supervisor and increased Bass's offense level by three levels, pursuant to U.S.S.G. § 3B1.1(b). In doing so, the district court stated, "Mr. Bass is the highest ranking person in the conspiracy. . . . Just because you're the boss, doesn't mean you're an organizer or leader within the meaning of the guidelines. That makes him the manager, and the fact that he supervised at least one other person makes him a supervisor." Specifically, the

5

district court stated that based on the testimony, Bass exhibited decision-making authority, was the highest ranking person, and exercised planning and organizing functions, and the drug enterprise was extensive. Therefore, the district court calculated Bass's total adjusted offense level as 38 and his criminal history category as VI. Using these calculations, Bass's Guidelines range was 360 months' to life imprisonment.

At the sentencing hearing, the district court again asked Bass about his prior drug convictions. Specifically, the court inquired if Bass had any basis for arguing that his prior drug convictions were invalid or could not be used in sentencing him under the pending indictment. Bass replied that he did not have any such basis. The district court noted that, as a result of Bass's prior convictions, a statutory mandatory minimum of life imprisonment applied to Bass's sentence. The district court then sentenced Bass to life imprisonment. Notably, in its "Statement of Reasons," the district court stated that the life sentence was mandated by statute but that the same sentence would be imposed even if the Guidelines were found non-binding as a result of Blakely/Booker.

## II. DISCUSSION

On appeal, Bass argues that the district court violated his Sixth Amendment rights, as explicated in Booker, by enhancing his sentence based on facts that he

6

did not admit and that were not proven to a jury beyond a reasonable doubt.[2]

In Booker, the Supreme Court held that Blakely applied to the Sentencing Guidelines. United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005). "Under Booker, [] there are two kinds of sentencing errors: one is constitutional and the other is statutory." United States v. Dacus, 408 F.3d 686, 688 (11th Cir. 2005). "[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." Rodriguez, 398 F.3d at 1298 (emphasis in original). The statutory error occurs when the district court sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

We first conclude that there was sufficient evidence to support the district court's fact-finding that Bass was a manager or supervisor under U.S.S.G. § 3B1.1(b). Bass admitted that he provided money to Goodman, who then used that money to acquire cocaine. Goodman then distributed the cocaine, received the

---

[2]Because Bass timely raised a Blakely objection in the district court, we review his Blakely, now Booker, claim de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (citation omitted).

proceeds, and repaid Bass with his initial investment plus his share of the profits. Bass was fully aware that Goodman was using his money to distribute both powder cocaine and crack. Further, the district court found that Bass was a supervisor or manager based on testimony at the sentencing hearing from Bass's brother and Angela Goodman. Specifically, the district court found that based on the testimony, Bass exhibited decision-making authority, was the highest ranking person, exercised planning and organizing functions, and the drug enterprise was extensive. Thus, the district court properly calculated Bass's Guidelines range. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (stating that after Booker, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines").

Nonetheless, there was a Sixth Amendment violation and Booker error because the district court sentenced Bass under a mandatory Guidelines regime based on facts found by the judge and neither admitted by the defendant nor found by a jury. See Rodriguez, 398 F.3d at 1300 ("The error is that there were extra-verdict enhancements used in a mandatory guidelines system.").

Even though there is a Sixth Amendment violation and Booker error, the government has met its burden to show that this constitutional error was harmless.

8

See Paz, 405 F.3d at 948.[3]  In Paz, which was a Booker constitutional error case, we explained that harmless error analysis puts the burden on the government to show "beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained."  Id. (quotation marks, punctuation, and citation omitted).  Thus, the government must show beyond a reasonable doubt that the mandatory, as opposed to the advisory, application of the Guidelines did not contribute to the defendant's sentence.  See United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005).

Although the district court did calculate Bass's sentence under the Guidelines, the district court ultimately sentenced Bass in accordance with the mandatory minimum specified for Bass's offense at 21 U.S.C. § 841(b)(1)(A). Indeed, the district court stated that the same sentence would be imposed even if the Guidelines were found non-binding as a result of Blakely/Booker.  Thus, any Booker error committed in determining Bass's sentence under the mandatory Guidelines was harmless.[4]

---

[3]"'To find harmless error, we must determine that the error did not affect the substantial rights of the parties.'"  Paz, 405 F.3d at 948 (quoting United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998)).  "A constitutional error, such as a Booker error, must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt."  Id. (internal quotation marks, punctuation and citation omitted).

[4]On appeal, Bass also argues that his attorney's failure to specifically object to Booker statutory error in addition to Booker constitutional error constituted ineffective assistance of counsel. Because we address Bass's Booker argument, we need not address his ineffective assistance of

**AFFIRMED.**

---

counsel argument further.  The <u>Booker</u> statutory error is also harmless for the same reasons stated above.

Bass also argues that the district court erred in failing to consider sufficiently the factors set forth in 18 U.S.C. § 3553(a).  However, because Bass was subject to and received a mandatory statutory minimum sentence of life imprisonment, we need not discuss this argument further.